IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMOR AYALA,

        Plaintiff,

        vs.                                         Civ. No. 24-1209  DHU/JFR

FRANK BISIGNANO, Commissioner,
Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 10)[2] filed January 31, 2025, in connection with Plaintiff's *Opposed Motion to Reverse or Remand,* filed April 30, 2025.  Doc.  17.  On June 30, 2025, Defendant filed a Response. Doc. 21.  On July 10, 2025, Plaintiff filed a Reply.  Doc. 22.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is well-taken and recommends that it be **GRANTED**.

### I. Background and Procedural Record

Plaintiff Amor Ayala ("Ms. Ayala") alleges that she became disabled on April 20, 2022, at the age of twenty-three and four months, because of iritis, rheumatoid arthritis,

---

[1] On January 21, 2025, United States District Judge David H. Urias entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 9.

[2] Hereinafter, the Court's citations to Administrative Record (Doc.10), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

spondylarthrosis, autism, asthma, hypothyroidism, hypertension, and depression.  Tr. 36, 201.

Ms. Ayala has a GED plus two years of college and has worked as an election ballot counter and

fast food restaurant assistant manager.  Tr. 202, 211.  Ms. Ayala stopped working on

November 7, 2020, because of her conditions and having caught COVID.  Tr. 201.

On April 20, 2022, Ms. Ayala protectively filed an application for Social Security

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*

Tr. 177-83, 184-85.  On September 26, 2022, Ms. Ayala's application was denied upon initial

review.  Tr. 61-68, 69, 89-92.  On August 18, 2023, it was denied at reconsideration.  Tr. 70-80,

81, 121-24.  Ms. Ayala requested a hearing before an Administrative Law Judge ("ALJ"), which

was held on March 4, 2024, before ALJ Marjorie Panter.  Tr. 32-60.  Ms. Ayala was represented

at the hearing by Attorney Benjamin Decker.  *Id.*  On June 14, 2024, ALJ Panter issued an

unfavorable decision.  Tr. 11-27.  On October 3, 2024, the Appeals Council issued its decision

denying Ms. Ayala's request for review and upholding the ALJ's final decision.  Tr. 1-6.

On December 2, 2024, Ms. Ayala timely filed a Complaint seeking judicial review of the

Commissioner's final decision.  Doc. 1.  Ms. Ayala argues (1) that the ALJ failed to resolve a

significant discrepancy between the Dictionary of Occupational Titles and the VE's testimony

and failed to apply the *Trimiar* factors to determine whether other work within Plaintiff's

restrictions arises in significant numbers; and (2) that the ALJ failed to meaningfully consider the

impact of Ms. Ayala's obesity on her mental impairments.  Doc. 17 at 20-28.  For the reasons

discussed below, the Court finds that the ALJ failed to resolve an apparent conflict and

erroneously included the job of document preparer as a job Ms. Ayala could perform.  As such,

the Court finds that the ALJ's determination as to the number of national jobs available to

Ms. Ayala is not supported by substantial evidence.  The Court further finds on harmless error

review that it is constrained from finding as a matter of law that 50,000 jobs in the national economy constitutes a significant number.  The Court, therefore, recommends remand.

## II. <u>Applicable Law</u>

### A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

## B.    Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not

4

based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III.  <u>Analysis</u>

The ALJ determined that Ms. Ayala had not engaged in substantial gainful activity since April 20, 2022, the application date. Tr. 16. The ALJ found that Ms. Ayala had severe impairments of degenerative disc disease of the lumbar spine, morbid obesity, asthma, seropositive rheumatoid arthritis, iritis, depressive disorder, anxiety disorder, autism spectrum disorder, agoraphobia, and schizotypal personality disorder. *Id.* The ALJ determined that Ms. Ayala's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 17-19. Accordingly, the ALJ proceeded to step four and found that Ms. Ayala had the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.967(a) except that

> she can occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; no concentrated exposure to environmental irritants such as dust, odors, gases, and fumes; understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions; have occasional contact and interaction with supervisors, coworkers, and the public; respond appropriately to frequent changes

5

in the workplace; and no work in bright lighting, defined as no work outdoors, no
stage or stadium lighting.

Tr. 19-20.  The ALJ determined that Ms. Ayala was unable to perform her past relevant work,

but considering her age, education, work experience, and residual functional capacity, that there

were jobs that existed in significant numbers in the national economy Ms. Ayala could perform.[4]

Tr. 27.  The ALJ determined, therefore, that Ms. Ayala was not disabled.  *Id.*

## A.      Apparent Conflict and Significant Number

Ms. Ayala first argues that the ALJ erred at step five of the sequential analysis by failing

(1) to resolve an apparent conflict between the VE's testimony and the DOT regarding the GED

reasoning level three of document preparer and the ALJ's restriction of Ms. Ayala's ability to do

work-related mental activities to simple work; and (2) to conduct a significant numbers analysis

under the factors set forth in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Doc. 17

at 20-24.  Ms. Ayala argues that the ALJ's errors are not harmless because eliminating the job of

document preparer leaves only 50,000 available national jobs and is a number too low to justify

supplying factual inferences about its significance.  *Id.*  Ms. Ayala argues that the specific facts

of this case lend themselves to the conclusion that 50,000 jobs are not significant because she

does not drive, she has problems with bright light thereby precluding her use of public

transportation, and she is limited to only the simplest forms of work which are unlikely to arise

in meaningful concentration in various regions nationwide.  *Id.*  Ms. Ayala further argues that the

ALJ's decision that she is disabled cannot be supported by substantial evidence because the ALJ

---

[4] The VE expert identified representative occupations of item inspector (DOT code 669.6870914, sedentary, SVP 2, 25,000 jobs nationally); office helper/document preparer (DOT code 249.587-018, sedentary, SVP 2, 15,000 jobs nationally); and small products assembler (DOT code 713.687.018, sedentary, SVP 2, 25,000 jobs nationally).  Tr. 27.

decided that 65,000 jobs constitute a significant number when only 50,000 jobs fall within the ALJ's RFC.  *Id.*

The Commissioner asserts that substantial evidence in the record supports the ALJ's finding that Ms. Ayala can perform work existing in significant numbers in the national economy.  Doc. 21 at 7-12.  The Commissioner maintains, without more, that GED reasoning levels are related to education levels, not mental impairments, and thus no conflict exists between a reasoning level of three and simple work.[5]  *Id.*  The Commissioner asserts, however, that even if there were a conflict between Ms. Ayala's ability to do work-related mental activities and the job of document preparer, the two remaining jobs constitute a significant number of jobs in the national economy such that remand is not necessary.  *Id.*  The Commissioner further asserts that courts in the Tenth Circuit have found numbers lower than 50,000 jobs to be significant when applying a  harmless error analysis and affirming ALJ decisions.  *Id.*  The Commissioner asserts that the ALJ was under no obligation to perform a *Trimiar* analysis because the focus here was on national jobs and the Tenth Circuit has repeatedly found numbers far lower than existing in this case were significant without any *Trimiar* analysis.  *Id.*  The Commissioner requests that the Court find that the remaining 50,000 jobs identified by the ALJ and VE constitute substantial evidence to support the ALJ's determination that Ms. Ayala is not disabled.  *Id.*

At step five, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do,

---

[5] The Court will not address this argument as it is conclusory and undeveloped.  *Grede v. Astrue*, 443 F. App'x 323, 327 (10th Cir. 2011) (unpublished) (declining to address a contention that was "conclusory, undeveloped, and raised only in [the] conclusion").  That said, the Court notes that the Commissioner has previously raised this boilerplate argument which the Court has addressed and found unpersuasive.  *See Muniz v. Saul*, 2020 WL 1434270, at *5-6 (D.N.M. Mar. 24, 2020).

given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2). In meeting this burden, the Commissioner may rely on information in the DOT and its companion publication, U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) (the "SCO"), as well as VE testimony. *See* 20 C.F.R. § 416.966(d)-(e) (providing the ALJ reliance on, *inter alia*, DOT and VE testimony); *see also Kimes v. Comm'r, SSA*, 817 F. App'x 654, 658 (10th Cir. 2020) (unpublished) (recognizing SCO as companion publication to DOT that may be considered at step five).

The Tenth Circuit has held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (emphasis added). The Tenth Circuit later clarified that *Haddock's* holding extends to nonexertional limitations. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). In unpublished but persuasive caselaw, the Tenth Circuit adopted another court's characterization of the ALJ's inquiry burden:

> [T]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so . . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is *per se* controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003) (unpublished) (quoting *Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000)); *see also, e.g., Kyle Edward Victor G. v. Saul*, No. 19-cv-2518-JWL, 2020 WL 3960422, at *9 (D. Kan. July 13, 2020) ("SSR 00-4p requires the ALJ to address apparent conflicts, not *all* conflicts."). However, absent any actual conflict, the ALJ's failure to make such an inquiry is harmless. *See Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

Here, the ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT regarding the reasoning level of document preparer that the VE identified. This is error. In this case, the ALJ's mental RFC specifically limited Ms. Ayala to, *inter alia*, "understand, remember, and carry out simple instructions; use judgment to make simple work-related decisions." Tr. 20. Pursuant to the Dictionary of Occupational Titles, this limitation restricts Ms. Ayala to reasoning level one jobs. *See Appendix C – Components of the Definition Trailer*, 1991 WL 688702 (explaining that Reasoning Level I requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions"; Reasoning Level II requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. . . ."); *see also Hackett*, 395 F.2d at 1176 (finding that a limitation to "simple routine work tasks" is more consistent with jobs requiring level two reasoning and holding that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this

conflict).[6]  As such, the ALJ erred in failing to resolve the apparent conflict and improperly

relied on the job of document preparer, which requires a reasoning level of three, as substantial

evidence to support a determination of nondisability.

Next, the Court finds that ALJ was not required to conduct a *Trimiar* analysis to establish

that the total national job number of 65,000 in the first instance was significant.  In *Trimiar*, the

issue was whether 650 to 900 jobs existing in the region constituted a "significant number" for

purposes of the statute.  966 F.2d at 1330 (citing 42 U.S.C. § 423(d)(2)(A) (1991)).[7]  The Tenth

Circuit listed "several factors" borrowed from the United States Court of Appeals for the Eighth

Circuit that "go into the proper evaluation of significant numbers."  *Id.* (quoting *Jenkins v.*

*Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).  Those factors included (1) the level of claimant's

disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is

capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and

(5) the types and availability of such work.  *Id.*  With those factors in mind, the Tenth Circuit

ultimately determined that substantial evidence supported the ALJ's decision.  *Id.* at 1332.

In subsequent cases, the Tenth Circuit has offered guidance on when those factors apply.

In *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009), the question before the court was whether

---

[6] Although the Tenth Circuit in *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), found that a limitation to "simple routine work tasks" is more consistent with jobs requiring level two reasoning, *id.* at 1176, that is not the case here because the ALJ did not limit Ms. Ayala to simple routine work tasks, but to simple instructions and simple work-related decisions.  Nonetheless, the fact that *Hackett* did not consider this particular argument does not undermine its precedential effect that when an ALJ limits a claimant to simple work, as is the case here, the ALJ should resolve conflicts that arise with respect to that non-exertional limitation and job descriptions in the DOT.

[7] An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy*, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A) (emphasis added).

or not the job of rental clerk existed in significant enough numbers.[8]  *Id.* at 177.  In reliance on

*Trimiar*, the claimant argued that a significant number of jobs must exist in the regional economy

and "that the ALJ should have engaged in a multi-factor analysis" to make that assessment.  621

F.3d at 1274, n. 2.  The Tenth Circuit rejected the claimant's argument, holding that the

controlling statutes, federal regulations, and case law all indicate that the proper focus is

generally on jobs in the national, not regional, economy.  *Id.*  The court also distinguished the

facts in *Trimiar* and noted that *Trimiar* does *not* hold that only regional jobs are relevant, or that

a court must engage in a factorial analysis when the number of jobs available is much larger than

the number of jobs that were available in *Trimiar*, *i.e.,* 650 to 900.  *Id.* at 178, n. 2.

This District has taken this direction to mean "that the *Trimiar* analysis does not extend

to the question of whether there are significant numbers of *nationally* available jobs."  *Rodriguez*

*v. Berryhill*, 2018 WL 1627209, at *5 (D.N.M. Mar. 31, 2018) (internal quotation marks and

citation omitted).  Indeed, "the multi-factorial analysis required by *Trimiar* focuses on factors

relevant in analyzing the true availability of local job opportunities on a more particularized

inquiry as to the specific claimant under consideration."  *Id.* (alteration, internal quotation marks

and citation omitted).  "Thus, where the focus is on the national availability of jobs[,] the

particularized *Trimiar* inquiry would confuse the issues."  *Id.* (alteration, omission, internal

quotation marks, and citation omitted).  The Court is guided by this standard.

The question that remains, therefore, is whether the ALJ's error in failing to resolve the

apparent conflict between the VE's testimony and the DOT, the result of which is fewer national

jobs available to Ms. Ayala, is harmless.  It is undisputed that the ALJ did not consider in the

---

[8] The Court found it was undisputed "that there are some 1.34 million rental clerk jobs available in the national economy and 385 in the New Mexico economy."  *Raymond*, 621 F.3d at 1274.

first instance whether 50,000 national jobs is a "significant number." Had she done so, the Court would be justified in affirming the decision as to this issue. *See Sears v. Berryhill*, 2018 WL 2002487, *10 (D.N.M. April 30, 2018) (noting that a substantial evidence review would support that 50,000 was a significant number of jobs). However, that is not the case here. As such, the Court must apply the more rigorous harmless error standard and determine whether it can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way. In other words, that 50,000 jobs is so significant a number that no reasonable factfinder would consider it insignificant. *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). In the Tenth Circuit, what constitutes a "significant number[]" of jobs, as that term is used in 42 U.S.C. § 423(d)(2)(A), is not established by a "bright line." *Trimiar,* 966 F.2d at 1330. Rather, "each case should be evaluated on its individual merits." *Id.* Proper analysis of the question of what amounts to numerical significance does not involve "judicial line-drawing" and "entails many fact-specific considerations requiring individualized evaluation." *Id.* Finally, "and, most importantly, . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks and citation omitted).

The Commissioner cites a number of cases from other districts within the Tenth Circuit with findings to support its position that under a harmless error analysis 50,000 jobs is a significant number.[9] Doc. 21 at 9. In cases from this District, however, jurists have been

---

[9] The majority of the cases the Commissioner cites are from districts in Oklahoma. Doc. 21 at 9. The cases cited rely primarily on *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished), in which the court implied that 11,000 nationally available jobs was a significant number. *See Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) (persuaded by *Rogers* and finding 32,000 jobs in the national economy significant and failure to reconcile apparent conflict harmless); *Robben v. Saul*, 2021 WL 433202, *4 (W.D. Okla, Feb. 8, 2021) (persuaded by *Rogers* and finding 40,000 jobs significant for purposes of harmless error); *Sly v. Berryhill*, 2018 WL 1954836, at *3 (W.D. Okla. Apr. 25, 2018) (persuaded by Rogers and finding 32,000 jobs significant despite apparent inconsistency);

unwilling "to make that sort of sweeping pronouncement" that 50,000 national jobs, and even

higher job numbers, are significant under a harmless error review. *See Sears v. Berryhill*, 2018

WL 2002487, at *11 (D.N.M. April 20, 2018) (applying harmless error standard and remanding

because ALJ had not determined whether 50,000 national jobs were significant); *see also Bright*

*v. Saul*, 2020 WL 1450548, at *5 (D.N.M. March 25, 2020) (applying harmless error standard

and remanding because a reasonable factfinder could conclude that 60,000 jobs is not significant

under facts of the case); *Devlin v. Saul*, 2020 WL 4583869, at *6 (D.N.M. Aug. 10, 2020)

(applying harmless error and declining to conclude as a matter of law that 55,700 jobs in the

national economy constitutes a significant number) (citing cases)); *Saiz v. Kijakazi*, 2022 WL

1078576, *8-10 (D.N.M. April 11, 2022 (applying harmless error and remanding because ALJ

did not find that 134,000 nationally available jobs amounts to significant number and citing cases

with similarly high numbers) (citing cases)).

---

*Jones v. Colvin*, 2015 WL 5573074, at *3 (E.D. Okla, Sept. 22, 2015) (persuaded by *Rogers* and finding 15,520 jobs significant and that step five findings were supported by substantial evidence); and *Sawney v. Saul*, 2020 WL 5652177, at *9 (E.D. Okla. Sept. 22, 2020) (persuaded by *Rogers* and finding 25,000 jobs significant despite apparent conflicts).

The question before the Court in *Rogers*, however, was whether the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding the exertional requirement for the job of hand packager. *Rogers*, 312 F. App'x at 141-42. The hand packager job required medium exertional capacity; however, the ALJ's RFC assessment had limited claimant to lifting no more than 10 pounds at a time or lifting and/or carrying more than 3-5 pounds more than occasionally. *Id.* at 141. The Court held that because the VE testified, on the basis of his professional experience, that 11,000 *sedentary* hand packager jobs existed in the national economy, the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirements was reasonably explained, and the ALJ could rely on the testimony as substantial evidence to support her determination of nondisability. *Id.* at 142. Notably, the Court in *Rogers* did not directly address the issue of significance nor did it apply a harmless error standard of review. As such, jurists in this District have found its persuasive value is limited. *See, e.g., King v. Berryhill,* 2018 WL 851358, at *12, fn. 9 (D.N.M. Feb. 12, 2018); *Crockett v. Berryhill*, 2018 WL 6250602, at *5 (D.N.M. Nov. 29, 2018); *Roybal v. Berryhill*, 2019 WL 318387, at *6 (D.N.M. Jan. 4, 2019); *Olguin v. Berryhill*, 2019WL 2232206, at *7 (D.N.M. May 23, 2019); *Holmes v. Saul*, 2019 WL 3290492, at *4 (D.N.M. July 22, 2019); *Houston v. Saul*, 2019 WL 4346133, at *10 (D.N.M. Sept. 12, 2019).

The undersigned has applied the harmless error analysis to find that the number of positions nationally was significant after it eliminated one of three jobs that the ALJ incorrectly identified. *See Kupfer v. Kijakazi*, 2023 WL 4421201, *6 (D.N.M. July 10, 2023). In that case, after finding the ALJ erred in failing to resolve an apparent conflict as to one job, the remaining two jobs provided a total of 164,000 positions nationally. *Id.* The undersigned concluded that persuasive Tenth Circuit case law supported that 164,000 jobs was a significant number for application of harmless error. *Id.* (citing *Stokes v. Astrue*, 274 F. App'x 675, *7 (10th Cir. 2008) (considering 11,000 jobs regionally and 152,000 nationally and finding that no reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region or several regions of the county jobs nationally did not exist in significant numbers)). But 164,000 national jobs is a much higher number than the 50,000 national jobs at issue here and the Court is not prepared to conclude that 50,000 jobs is so significant a number that no reasonable factfinder would consider it insignificant. Particularly in this case where, as Ms. Ayala emphasizes, she does not drive, has poor vision, and has difficulty with bright light. *See Sears*, 2018 WL 2002487, *11 (explaining situations where a rational factfinder could conclude that 50,000 national jobs is not a significant number).

Given the high bar the Tenth Circuit has set for a court to determine significance as a matter of law, the Court declines to find as a matter of law that 50,000 jobs in the national economy constitutes a significant number.

**B.    <u>Remaining Claim</u>**

Ms. Ayala advances an additional argument in support of her Motion to Reverse or Remand. However, because the Court concludes that remand is required as set forth above, it will not address the remaining claim of error. *See Chambers*, 389 F.3d at 1143 (explaining that it

is for the Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

## IV.  Recommendation

For all of the reasons stated above, the Court finds that Ms. Ayala's Motion is well taken. The Court, therefore, recommends that the Motion be **GRANTED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**